Brenda **HUSSION, et al., Plaintiffs,**

v.

**Clayton YEUTTER, et al., Defendants.**

**Civ. A. No. 1:86–cv–1778–MHS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 11, 1990.

Patricia Deandrea Barron, Georgia Legal Services Programs, Gainesville, Ga., John L. Cromartie, Jr., Phyllis J. Holmen, Susan Alice Reif, N. Katherine Young, Atlanta, Ga., Mary Ayres Gardner, Kay Yvonne

Young, Georgia Legal Services Program, Atlanta, Ga., for plaintiffs.

Amy D. Levin, James Randolph Schulz, Jane Wilcox Swift, Office of U.S. Atty., N.D. Ga., Atlanta, Ga., Don J. Mros, Felicia L. Chambers, Arthur R. Goldberg, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for Richard E. Lyng and Vance Clark.

Archer D. Smith, III, Harmon Smith & Bridges, Atlanta, Ga., for Douglass Village, Ltd., Interfaith, Inc., Interfaith Management, Inc. and Eugene H. Bowens.

## ORDER

SHOOB, District Judge.

This action was filed in 1986 to challenge the 1983 Amendment of a Farmers Home Administration ("FmHA") regulation. The Amendment abolished a tenant's right to an administrative hearing prior to eviction from FmHA-financed housing. Plaintiffs allege that the agency eliminated the grievance and appeals procedure in violation of the Administrative Procedure Act ("APA"). The action also challenges the failure of local defendants to provide grievance hearings to plaintiffs and contests the amount of late fees charged to tenants. Several motions are now pending before the Court.

Cross-motions for summary judgment by plaintiffs and federal defendants are pending, as well as plaintiffs' request for attorney fees in connection with their second motion to compel and plaintiffs' motion for Rule 11 sanctions. The only remaining substantive issue concerning the local defendants involves the amount of late fees owners may charge tenants.[1]

For the reasons set forth below, the Court will grant in part and deny in part both plaintiffs' motion for summary judgment against federal defendants and federal defendants' motion for summary judgment. The Court will deny plaintiffs' request for Rule 11 sanctions. Finally, the Court will grant plaintiffs' motion for summary judgment on the issue of late fees and will deny local defendants' motion for summary judgment on the same issue.

## I. Background

Plaintiffs are residents of a low-income apartment complex in Douglas County, Georgia. The construction of the housing was financed by the FmHA pursuant to 42 U.S.C. § 1485 (1982 & Supp. V 1987), and the tenants' rents are subsidized by HUD pursuant to Section 8 of the United States Housing Act of 1937. *See* 42 U.S.C. § 1437f(b)(1) (1982 & Supp. V 1987). Defendants Richard E. Lyng and Vance Clark (the "federal defendants") are responsible for FmHA's participation in the joint project. Defendants Douglas Village, Ltd.; Interfaith, Inc.; Interfaith Management, Inc.; and Eugene Bowens (the "local defendants") own and operate the Douglas County apartment complex.

In 1978, the National Housing Act was amended, authorizing the Secretary of Agriculture to:

> issue rules and regulations which assure that applicants denied assistance under this subchapter or persons or organizations whose assistance under this title is being substantially reduced or terminated are given written notice of the reasons for denial, reduction or termination and are provided at least an opportunity to appeal an adverse decision and to present additional information relevant to that decision to a person, other than the person making the original determination, who has authority to reverse the decision.

42 U.S.C. § 1480(g) (1982). In 1980, FmHA implemented an appeals procedure pursuant to § 1480(g) to handle tenant grievances, including eviction or termination of tenancy. *See* 7 C.F.R. §§ 1944.554–559 (1980). It is that appeals procedure that is the subject matter of this action.

The grievance and appeals procedure enables tenants to meet informally with owners/managers to resolve disputes. If the dispute is not resolved informally, the tenants may pursue an administrative hearing before a hearing officer or panel. *Id.* Al-

---

1. The Court previously approved a settlement agreement relating to all other issues concerning local defendants. *See* Order dated January 17, 1990.

though the rules of evidence do not apply, the administrative hearing affords many familiar due process protections, including (1) an impartial decision maker; (2) the right to be represented by counsel; and (3) the right to present and refute evidence. *Id.* While the hearing officer's determination is binding on the parties, it "does not preclude either party's right thereafter to seek judicial relief through the courts." 7 C.F.R. § 1944.558(b) (1990).

In 1982, FmHA proposed to remove termination of tenancy and eviction from the appeals procedure and invited comment from all interested parties. *See* 47 Fed. Reg. 17,300 (1982) (proposed April 22, 1982). The final rule as published in 1983 (the "Amendment") exempted from the appeals procedure the issues of termination of tenancy and eviction. 7 C.F.R. § 1944.553(f) (1990). The Amendment specifies that:

> [t]ermination of tenancy and eviction must be based on material violation of the lease terms or for other good cause as determined by the borrower or the project manager.... The borrower shall not evict any tenant except by judicial action pursuant to State or local law and in accordance with the requirements of this subpart.

*Id.* The elimination of termination and eviction actions from the appeals procedure prompted this lawsuit.

Plaintiffs contend that the amendment is not in accordance with 42 U.S.C. § 1480(g) and is arbitrary and capricious in violation of the Administrative Procedure Act ("APA"). 5 U.S.C. § 551–59 (1988). By order dated August 28, 1987, the Court dismissed plaintiffs' complaint to the extent it challenged the amendment as contrary to the requirements of § 1480(g). The Court found that § 1480(g) did not mandate an administrative hearing for termination of tenancy and eviction. *See* Order dated August 28, 1987, at 11.

The Court did not dismiss, however, plaintiffs' APA claim because plaintiffs had not conducted discovery. *Id.* at 13. Discovery ensued and the administrative record was filed on November 30, 1987.

After several discovery disputes, a revised administrative record was filed on August 8, 1988. Discovery closed on November 7, 1988, and the present motions for summary judgment were filed, followed by numerous supplemental briefs.

## II. Discussion

### A. Federal Defendants

1. The Arbitrary and Capricious Claim

■ Plaintiffs seek summary judgment against federal defendants on the grounds that the amendment process violated the APA. The APA requires a court to set aside agency rules if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988). Judicial review of an administrative action should be conducted with a presumption of administrative regularity and with deference to the agency action. *Organized Fishermen of Florida v. Hodel,* 775 F.2d 1544, 1549–50 (11th Cir. 1985), *cert. denied,* 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986).

The agency's actions, however, are not reviewed without some degree of scrutiny.

> Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, [the Court] must "consider whether the decision was based on consideration of the relevant factors and whether there has been a clear error of judgment." Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Manufacturers Association v. State Farm Mutual,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). FmHA's actions do not withstand scrutiny

even under this narrow standard. After a thorough review of the revised administrative record and for the reasons stated in detail below, the Court finds that FmHA eliminated the grievance and appeals procedure in violation of the APA because it failed to consider an important aspect of the change: the degree of protection provided to tenants through state and local eviction procedures. The Court also finds FmHA's explanation of the change contrary to the bulk of evidence before the agency.

In response to its initial request for comments on the proposed regulations, FmHA received numerous comments from opponents of the change concerning the adequacy of state laws to protect the rights of tenants in eviction cases. *See* Revised Administrative Record at Tab 14. FmHA announced on November 19, 1982, that it would hold an informal meeting to discuss and clarify the comments received as a result of the proposed rule change. *See* Revised Administrative Record at Tab 19. In addition, the agency solicited additional comments on the following question:

> What would be the adequacy of State and local laws to protect the rights of all parties involved? What assurances do State and local law provide to make sure due process will be served?

*Id.* FmHA was aware from the onset of possible challenges to state and local laws.

An informal meeting regarding the proposed change in the grievance and appeals procedure took place on December 6, 1982. A summary of the meeting prepared by L.D. Elwell ("Elwell"), FmHA Assistant Administrator of Housing, acknowledged that opponents of the change argued that the Amendment violated 1480(g) and insisted that many state laws did not provide

tenants adequate due process. *See* Revised Administrative Record at Tab 21. "FmHA should not require evictions [sic] be settled under State law. State laws vary and may effectively prohibit a tenant's rights of appeal. FmHA's present regulation provides a uniform appeal process." *Id.* Supporters of the Amendment contended that later supplements to the rule by FmHA could cure any state law inadequacies. *Id.*[2] Elwell concluded that the "Office of General Counsel has given a written opinion that State laws are adequate to provide due process in eviction proceedings involving FmHA financed projects."[3] *Id.*

FmHA initially attempted to respond to the comments concerning the adequacy of state laws. On December 23, 1982, Elwell wrote Lee P. Reno of the National Housing Law Project requesting a list of the state laws which the organization contended did not adequately protect tenants' rights. *See* Revised Administrative Record at Tab 23. Elwell later retracted the request, however, in a letter dated February 7, 1982, stating that "[w]e have determined that we are going to address termination as the major issue of the above-named procedure rather than the judicial process of eviction." *Id.* at Tab 26.

In its promulgation of the final rule, FmHA acknowledged the commentary concerning the inadequacy of state laws but responded summarily.

> The agency has addressed this issue by stipulating termination of tenancy and evictions are to be handled by judicial action pursuant to State and local law. The Agency determined that in the case of evictions or termination of tenants *that the right of tenants are fully protected under State and local law when*

---

**2.** According to the summary of the meeting, advocates of the proposed rule change commented that:

> (e) Existing federal laws insure due process and have precedence [sic] over State laws. Every tenant aggrieved has the right to a day in court which cannot be administratively denied.
> (f) Inadequacies in State laws covering evictions can be eliminated by issuing FmHA

State supplements to the proposed instructions.

Revised Administrative Record at Tab 21.

**3.** Defendants contend that the memorandum of the Office of General Counsel is not part of the administrative record and should be stricken. *See* Federal Defendants' Opposition to Plaintiffs' Motion for Summary Judgment at 11, n. 12. The Court has not considered the memorandum in its decision.

*a Judicial Process is required....* [T]he borrower [must] advise a tenant, in a termination notice, that the tenant is entitled to a court proceeding pursuant to State or local law at which he or she may present a defense to eviction. The borrower is prohibited from resorting to "self-help" evictions or any non-judicial process, even where authorized by State or local law.

48 Fed.Reg. 56,176 (December 19, 1982) (emphasis added). The Court does not find that this type of cursory treatment amounts to serious consideration of important aspects of the change.[4] FmHA nevertheless contends that its prohibition of "self-help" evictions in the final rule was an adequate response to the concerns expressed by the commentators regarding state and local eviction proceedings. A review of the Administrative Record indicates otherwise.

Opponents of the amendment did argue that many state laws allowed self-help evictions and, therefore, denied the tenant an opportunity to be heard. There were also, however, many other challenges to state procedures.[5] Commentators argued that retaliatory eviction was not prohibited in many states and noted the absence of the implied warranty of habitability as a protection for tenants in other states. *See*

Letter to FmHA from National Housing Law Project dated June 8, 1982, Revised Administrative Record at Tab 14; Letter to FmHA from Housing Assistance Council, Inc., dated June 21, 1982 at Tab 14; Letter to FmHA from Attorney Martha A. Miller, dated December 7, 1982, at Tab 22. Others argued that while there is a federal "good cause" eviction requirement, many state courts are not aware the tenant is being evicted from FmHA housing and the unrepresented tenant often fails to inform the court of this fact. *See* Letter to FmHA from Virginia Housing Network dated June 18, 1982, Revised Administrative Record at Tab 14. In addition, because many states did not themselves have a good cause requirement in eviction cases, the tenant's right to a finding of good cause for eviction is not protected.[6] *See* Letter from Attorney Martha A. Miller; Letter to FmHA from Virginia Housing Network, Revised Administrative Record at Tab 22; Letter to FmHA from Evergreen Legal Service, Washington State, Revised Administrative Record at Tab 22. Finally, opponents of the amendment argued that tenants often were not entitled to an opportunity to conduct discovery prior to summary judicial proceedings and were financially unable to appeal the decision of the trial

---

**4.** The Court previously noted the importance of the due process aspect of the Amendment. In its earlier order, the Court found that, while 42 U.S.C. § 1480(g) did not mandate an administrative hearing, "Congress' overriding intent was to guarantee due process." *See* Order dated August 31, 1987, at p. 12, n. 6. The Court noted that the legislative history of § 1480(g) indicated that the grievance and appeals procedure would

include at least a written notice of the ability to appeal an adverse decision, an opportunity to appeal to a person who had no role in making the original determination and who has the authority to reverse the decision, an opportunity to inspect agency records relevant to the initial decisions, to present additional relevant information and to receive the reviewing official's final decision with supporting reasons in writing.

*Id.* at p. 10, n. 4 (quoting House Conf. Rep. No. 95–1792, 95 Cong.2d Sess. (1978)), U.S.Code Cong. & Admin.News 1978, 4773.

**5.** Tenant advocates were not the only commentators expressing apprehension over complete reliance by FmHA on state laws in tenant evic-

tion cases. On June 14, 1982, Henry B. Gonzalez, Chairman of the U.S. House of Representatives Subcommittee on Housing and Community Development, wrote Charles Shuman, Administrator of FmHA, expressing the committee's concern over the proposed change in the grievance and appeals procedure. "The existing eviction procedures were designed taking into account that different states and localities had laws which varied greatly in the degree of protection for tenants." *Id.* at Tab 27. Representative Gonzalez requested a response from FmHA regarding the committee's concerns. There is no evidence of such a response in the administrative record.

**6.** Commentators suggested that FmHA incorporate a good cause requirement in the changed regulation to assure that such a burden would be part of an owner's case similar to the good cause requirement of the HUD regulation governing eviction from Section 8 housing. *See* 24 C.F.R. § 880.607(b)(2) (1989).

court. *See* Letter for National Housing Law Project at Tab 14.[7]

At no place in the record does FmHA attempt to refute specific allegations concerning state laws made by opponents of the change. Proponents of the Amendment offered little argument and summarily found that state laws would adequately protect tenants rights. The Court finds that FmHA either did not consider or ignored these important aspects of the Amendment and, as such, its decision cannot stand.

For many of the same reasons, the Court concludes that the FmHA decision is not adequately supported by the record. FmHA contends that it eliminated the grievance and appeals procedure in response to complaints that the procedure was duplicitous and burdensome.[8] FmHA solicited comments and received well-reasoned and legitimate challenges, yet the record reflects that the explanation runs counter to the information provided.[9] Neither agency expertise nor differing points of view can account for FmHA's failure to consider relevant factors. *Motor Vehicle Manufacturers Ass'n*, 463 U.S. at 43, 103 S.Ct. at 2866. Indeed, the explanation offered for the change in the final rule does not even contemplate that some tenants may not be afforded the due process guarantees secured by § 1480(g).[10] The Court, therefore, will grant plaintiffs' motion for summary judgment against federal defendants on the grounds that the agency's action was arbitrary and capricious.

7. FmHA's own office in Woodland, California advised that "State law is fairly lenient toward landlord in termination of tenancy and it is normally an expensive process for a tenant to challenge termination or eviction and obtain full due process." *See* Letter dated December 1, 1982, at Tab 22.

8. Plaintiffs question FmHA's justification for initiating the rule change. "In excluding evictions from the grievance process in 1983, FmHA justified its actions on undocumented complaints that the grievance process was burdensome, difficult to administer, lengthy and duplicated state eviction procedures." Memorandum In Support of Plaintiffs' Motion For Summary Judgment at 17. It is peculiar that the bulk of the complaints FmHA relies upon for such a major change in its procedures were oral and undocumented. In addition, FmHA was aware of this criticism when it initially promulgated the grievance and appeals procedure. However, FmHA need only provide a "reasoned analysis" supporting its change in course. *Motor Vehicle Manufacturers*, 463 U.S. at 43, 103 S.Ct. at 2866. FmHA indicates that contacts with field offices and meetings with concerned participants prompted the change in the regulation. Notwithstanding prior notice of these type of complaints, this is an adequate explanation for the initiation of the amendment process.

9. The Court questions FmHA's efforts to solicit truly relevant comment from interested parties. Plaintiffs and federal defendants disagreed throughout this litigation over the status of the only documented material concerning the grievance and appeals procedure. M.K. Smith, an employee of FmHA, collected and complied information regarding the appeals procedure with the help of FmHA staff from around the country. The compiled paper, entitled "Study of Farmers Home Administration Tenant Grievance and Appeals Procedure," was completed and presented to the agency in December of 1981. The study indicated, among other things, that from September 1979 until sometime between June and November 1981, only 69 grievances had been filed nationwide. Plaintiffs insist that if the agency had made the study available, commentators could have responded more intelligently and critically to the proposed changes.

The data collected by M.K. Smith and other staffers is the only documented information concerning the grievance and appeals procedure cited by any of the parties. While technically the study was not conducted by the FmHA, it is the most complete compilation of information on the procedure available to the agency or the public. If the FmHA sought truly relevant comment on the proposed change in 1982, it would have revealed during the commentary period the existence of the study.

10. Congress found low-income tenants' due process rights important in its elimination of the appeals procedure for HUD tenants. 42 U.S.C. § 1437d(k) (1982 & Supp. V 1987). This statute empowers HUD to exempt evictions from its administrative appeals procedure if the jurisdiction provides the "basic elements of due process." To assure that state laws provide adequate protection for tenants, HUD conducts an analysis of each state's evictions laws before removing evictions from the administrative grievance procedure. The agency recently determined that eviction proceedings in Magistrate's Court in Georgia do not provide the basic elements of due process because a tenant is not entitled to discover agency records relevant to the decision. *See* Plaintiffs' Notice Of Determination By HUD That Evictions In Magistrate Courts In Georgia Do Not Provide Due Process, Exhibit 1.

### 2. Enforcement of the Grievance Regulations

Plaintiffs claim that FmHA inadequately enforced the grievance regulations against the local defendants in violation of the APA. *See* 5 U.S.C. §§ 701–06 (1988). An agency's decision not to prosecute or enforce is a decision generally committed to the agency's absolute discretion. *Heckler v. Chaney,* 470 U.S. 821, 831, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). Where the enforcement decision involves a balancing of factors which are particularly within the agency's expertise, a federal court is ill-equipped to review the agency's decision. *Brown v. Housing Authority of McGrae,* 784 F.2d 1533, 1540 (11th Cir. 1986), *vacated and rev'd on other grounds,* 820 F.2d 350 (1987). However, enforcement decisions that do not involve the exercise of discretion are generally reviewable, particularly where an agency takes an affirmative step pursuant to its own regulations. *Id.* 470 U.S. at 832–33, 105 S.Ct. at 1656–57.

Despite plaintiffs' reference to regulations governing FmHA's duty to oversee management practices and eligibility determinations of owners, there are no regulations governing FmHA's enforcement of the grievance regulations. FmHA's decision not to enforce the grievance regulations against local defendants was within the agency's discretion and, therefore, presumptively unreviewable. The Court will grant defendants' motion for summary judgment on the issue of failure to enforce.

### 3. Rule 11 Sanctions

Plaintiffs move for the imposition of sanctions against federal defendants pursuant to Federal Rule of Civil Procedure 11 based on the filing of an administrative history in a Maine case challenging the same regulation, *Brewer v. Lyng,* No. 87–0351–B (D.Maine), that varied from the administrative record filed in the instant case. Federal defendants maintain that the production in the Maine case was inadvertent and that, in any event, the filing in this action was well grounded in law and fact. *See Donaldson v. Clark,* 819 F.2d 1551 (11th Cir.1987). The administrative record in this action has subsequently been revised to conform to the record in *Brewer.*

There is no question that plaintiffs labored to obtain all the information considered by FmHA in promulgating the new rule. While federal defendants were unclear about the exact contents of the administrative record, the Court does not feel that the agency commented on the completeness of the administrative record without any basis in fact. Apparently there was confusion among counsel for federal defendants in this case and *Brewer* concerning a coordinated approach to production of the administrative record. Federal defendants made good faith, albeit inconsistent, arguments that the record was complete. The Court will not sanction defendants for otherwise proper conduct.

### B. *Local Defendants*

Plaintiffs and local defendants have settled all issues except the amount of late fees that Douglas Village Apartments (the "apartments") may charge tenants. Local defendants argue that a fee of up to $30.00 may be charged for late payment of rent; plaintiff Brenda Hussion insists the amount may not exceed $5.00 as specified in her lease. The Court finds local defendants' interpretation of applicable regulations unreasonable.

Two federal agencies interact to provide assistance to the owners and tenants of the apartments. FmHA provided loan funds for the construction of the apartments and tenants' rents are subsidized by HUD. All tenants of the apartments who receive HUD assistance must meet FmHA eligibility requirements. 7 C.F.R. § 1930, Subpt. C, Exh. B, Para. IV C (1990). Conflicts between HUD requirements and FmHA requirements are referred to the FmHA District Director and "[g]enerally, the most restrictive HUD or FmHA requirements or limitations will apply." *Id.*

There is no HUD regulation that restricts the amount of late fees that an owner may charge. A provision in the HUD Handbook governing late fees does not apply to Section 515 projects that receive Section 8 assistance. *See* HUD

Handbook 4350.3 CHG–1 at para. 1–2. There is, however, an FmHA regulation which restricts late fees to a maximum of $10.00 per month. 7 C.F.R. § 1930, Subpt. C Exh. B, Para. IX B (1990). In addition, FmHA regulations require that late fee provisions be stated in the leases of all tenants. *Id.* at Para. VIII C.

Local defendants argue they may charge late fees up to $30.00 per month because this amount is more restrictive than the FmHA limit of $10.00 per month. The Court finds that defendants must abide by the late fee requirements of the FmHA regulation, and, therefore, are bound by the $5.00 limit in plaintiff Hussion's lease. Local defendants may formally amend their leases pursuant to FmHA and HUD regulations, but in no event may late fees exceed $10.00.

III. Conclusion

This action presented a difficult question regarding FmHA's elimination of an important protection for rural tenants. The Court is not concerned with the substance of the rule change by FmHA. It is the procedure employed by the agency during the rule change that violates the APA. The administrative record is replete with legitimate concerns over the elimination of evictions from the grievance and appeals procedure. The record is devoid, however, of any indication that the agency considered important aspects of the change raised by opponents of the new rule. In addition, FmHA's conclusion that state and local laws provide adequate protections to tenants runs counter to much of the evidence before the agency. FmHA may attempt to re-promulgate the rule the Court finds invalid today; if it does, however, the agency must give serious consideration to all sides of the argument.

Accordingly, the Court GRANTS IN PART and DENIES IN PART plaintiffs' motion for summary judgment and GRANTS IN PART and DENIES IN PART federal defendants' cross-motion for summary judgment. The Court DENIES plaintiffs' motion for Rule 11 sanctions and GRANTS plaintiffs' motion for summary

judgment against local defendants on the issue of late fees. The Court DENIES local defendants' motion for summary judgment.

IT IS SO ORDERED.