950 F.2d 1546
 60 USLW 2485
 Brenda HUSSION, on Behalf of herself and all others
similarly situated, Plaintiffs-Appellees,
v.
Edward R. MADIGAN, Secretary, in his official capacity as
the Secretary of the U.S. Department of
Agriculture, et al., Defendants-Appellants.
 No. 90-8873.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 24, 1992.
 
 D. Bruce La Pierre, Barbara C. Biddle, U.S. Dept. of Justice, Civ. Div., Washington, D.C., and Archer D. Smith, III, Harmon Smith & Bridges, Atlanta, Ga., for defendants-appellants.
 Susan Alice Reif and Kay Y. Young, Georgia Legal Services Program, Atlanta, Ga., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HILL, Senior Circuit Judge.
 BIRCH, Circuit Judge:
 
 
 1
 In this appeal we consider whether the district court erred in holding that it was arbitrary and capricious for the Farmers Home Administration ("FmHA" or "Agency") to eliminate administrative review of lease terminations and evictions in FmHA-financed housing. In 1983, the FmHA altered the appeal process applicable to lease termination and eviction cases by substituting state judicial process in place of the previously established administrative review procedure. The regulations, as modified, now provide that landlords in FmHA program housing may evict a tenant only for a "material violation of the lease terms or for other good cause" in a "judicial action pursuant to State or local law." 7 C.F.R. § 1944.553(f) (1991). Our review discloses that the FmHA's 1983 amendment to its regulations was entirely consistent with the enabling act authorizing the FmHA housing program at issue, and that the Agency's action clearly was not arbitrary and capricious under the Administrative Procedure Act ("APA"). See 5 U.S.C. 706(2)(A) (1988). Accordingly, we REVERSE the judgment of the district court.
 
 I. BACKGROUND
 A. The Relevant Facts
 
 2
 In 1986, appellees Brenda Hussion and Julie Wright were tenants in the Douglass Village Apartments, a housing project financed by the FmHA and subsidized by the Department of Housing and Urban Development ("HUD").[1] The FmHA financed the complex as part of a program to provide low income apartment units in rural areas. See 42 U.S.C. § 1485 (1988). In this program and similar housing projects, the rent of tenants is calculated, pursuant to federal requirements, to equal 30% of monthly adjusted family income. See 42 U.S.C. § 1437f(o )(11)(B)(ii) (1988); 24 C.F.R. § 813.107(a)(1) (1991). The present dispute arose from the failure of Douglass Village Apartments to participate in a grievance procedure to resolve problems with Hussion's and Wright's tenancies. In both cases, the tenancies were terminated based on non-payment of rent, following a disputed assessment of family income and a resulting miscalculation of rent.
 
 
 3
 Hussion and Wright sought to invoke the FmHA's informal grievance procedure to resolve the issues surrounding their lease terminations. When the owners of the complex declined to participate in any informal dispute resolution process, they sued to enforce their rights to grievance hearings as provided by relevant regulations. Although their original complaint involved other adverse actions in addition to eviction, the appellees were prompted to challenge in the same law suit the FmHA's decision to abolish the right to have an administrative hearing prior to eviction. In this connection, they instituted the present action on behalf of themselves and others similarly situated against Richard E. Lyng in his official capacity as the Secretary of the Department of Agriculture,[2] and Vance Clark as Administrator of the FmHA, seeking to enjoin enforcement of a 1983 amendment to the FmHA's tenant grievance and appeals procedure regulations.[3] See 7 C.F.R. § 1944.551-.559 (1991). The complaint alleged that this amendment, designed to streamline the grievance process in cases of lease terminations and evictions, see 47 Fed.Reg. 17,300 (1982), was adopted in violation of the enabling act. See 42 U.S.C. § 1480(g) (1988). In addition, the complaint stated that the amendment had been promulgated in an arbitrary and capricious manner in violation of the APA. See 5 U.S.C. § 706(2)(A) (1988).
 
 B. The History of the Relevant Regulations
 
 4
 The FmHA first proposed the contested revision to the tenant grievance and appeals procedure regulations in 1982. Prior to this time, the grievance procedure had been governed by regulations originally adopted in 1979 which provided for informal meetings to settle disputes between landlords and tenants. See 7 C.F.R. § 1944.555 (1991). Under those regulations, if the informal meeting failed to yield a settlement, the dispute was committed to an administrative hearing process in which an impartial officer or three-member panel would review the evidence and render a written decision, subject to review by the district director of the FmHA. Id. §§ 1944.556(b), .558(b). In 1980, the grievance and appeals procedure regulations were amended to exclude from the process those cases of evictions for failure to pay rent, as well as cases in which "a tenant's continued occupancy constitutes an imminent threat to the health or safety of other residents or management employees," as long as eviction was pursued through state law. 45 Fed.Reg. 70,841, 70,843 (1980). Concurrent with these changes, the FmHA implemented the requirement that a termination must be for a "material violation of the lease terms or for other good cause." 7 C.F.R. pt. 1930, subpt. C, exh. B, para. XIV(B) (1991). The FmHA also amended the regulations to provide that the determination reached in the FmHA grievance and appeals process "does not preclude either party's right thereafter to seek judicial relief through the courts." 7 C.F.R. § 1944.558(b) (1991).
 
 
 5
 Concerns about the burdens of this multi-layered process prompted the FmHA to propose revisions in 1982 intended to remove eviction actions governed by state law from the grievance process. The FmHA also proposed that a direct review of the outcome of the informal meeting by the district director be substituted for the existing review hearing conducted by a hearing officer or panel. See 47 Fed.Reg. 17,300, 17,301-02 (1982). In particular, the FmHA was concerned that unpaid hearing officers with suitable qualifications were difficult to secure in rural areas and that the costs of retaining such persons for pay would burden all tenants in the form of higher rents. Id. at 17,300. Hence, the FmHA sought to modify the rules to minimize potential economic burdens inuring to participants in program housing. The Agency published notice of the proposed rulemaking, collected comments, invited the commenting parties to extend and clarify their comments, and summarized the positions urged by opponents and proponents before issuing its final rule in December 1983. See 48 Fed.Reg. 56,175, 56,175-77 (1983).
 
 
 6
 In light of the public comments offered, the FmHA decided in the final rule to retain the hearing officer or panel as a component of the process, and, rather than completely removing evictions from the regulations, further decided that lease terminations would be permissible only through state or local judicial action. Thus, the agency's modified rule answered concerns attending the wholesale elimination of the hearing officer or panel, as well as the specter that "self-help" evictions might take place in those states that permitted them. The regulation contested in this appeal now provides that "[t]ermination of tenancy and eviction must be based on material violation of the lease terms or for other good cause" and that eviction shall not take place "except by judicial action pursuant to State or local law." 7 C.F.R. § 1944.553(f) (1991).
 
 C. The Proceedings Below
 
 7
 In August of 1987, the district court held that the 1983 amendment to the FmHA tenant grievance and appeals procedure was consistent with constitutional due process requirements and the enabling statute, 42 U.S.C. § 1480(g) (1988):
 
 
 8
 [Assuming that] § 1480(g) mandates that eviction and termination of tenancy be considered in an administrative hearing ... the 1983 Amendment satisfies the literal terms of that mandate.
 
 
 9
 * * * * * *
 
 
 10
 [While t]he statute reflects Congress' concern that [the pre-1978 FmHA provisions were] 'seriously deficient in terms both or procedural and substantive due process' ... the 1983 Amendment does not violate the underlying spirit of § 1480(g).
 
 
 11
 Order of August 31, 1987, R3-68-6-8 (citations omitted). Despite determining that the 1983 amendment satisfied the mandates of relevant law and expressing the view that there was apparently "little merit in plaintiffs' argument under the arbitrary-and-capricious standard," the district court nevertheless denied dismissal of that aspect of the complaint in order to allow full discovery. Id. at 12-13.
 
 
 12
 After a review of the revised administrative record that emerged from the ensuing discovery, the district court held in July 1990 that the 1983 amendment was arbitrary and capricious in violation of the APA. See Hussion v. Yeutter, 741 F.Supp. 1563, 1568 (N.D.Ga.1990). In particular, the district court determined that the agency had accorded only cursory treatment to comments attacking its proposed revisions in which opponents pointed out several ways in which state laws were inadequate to protect tenants rights. Id. at 1567. The district court found that FmHA "either did not consider or ignored these important aspects of the [1983] Amendment" and that its explanation for the changes embodied by the new rule was not adequately supported by the record. Id. at 1568. It therefore granted summary judgment in favor of the appellees on their APA-based claim.
 
 
 13
 The FmHA now challenges the district court's grant of summary judgment, arguing that the Agency's action satisfied the rigors of the arbitrary-and-capricious standard applicable to administrative actions. See 5 U.S.C. § 706(2)(A) (1988). Joining with the view adopted by the First Circuit in reviewing this regulation, we agree, concluding for the reasons set forth below that the FmHA action was neither contrary to law nor arbitrary and capricious. See Brewer v. Madigan, 945 F.2d 449 (1st Cir.1991).[4] We therefore find that the challenged regulation was properly promulgated and direct the district court to enter judgment in favor of the appellants.
 
 II. DISCUSSION
 A. Standard of Review
 
 14
 As outlined by the APA, judicial review of informal rulemaking assesses whether an agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988). Our review of the agency's action accords a presumption of administrative regularity and is conducted with some deference to the agency's determination. Organized Fishermen v. Hodel, 775 F.2d 1544, 1550 (11th Cir.1985), cert. denied, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 978 (1986). The actual level of deference that we will accord an agency's construction of the statute it administers has been clearly delineated by the Supreme Court:
 
 
 15
 If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 16
 Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (footnotes omitted).
 
 
 17
 The district court's application of these principles is a legal question subject to plenary review by this court. See Cabriolet Porsche Audi, Inc. v. American Honda Motor Co., 773 F.2d 1193, 1201 (11th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986). Our task, therefore, is to render an independent decision in light of the facts in the record and the same principles which govern the district court. We proceed accordingly on the basis of the same revised administrative record that was relied upon below.[5]
 
 
 18
 B. Whether the Regulation Is Contrary to Law
 
 
 19
 Since the district court found that the 1983 amendment was not contrary to law, appellant does not urge us to directly consider that question on appeal. However, we are authorized to affirm the district court's rejection of the 1983 amendment on any ground which the law and record permit. See Furness Withy (Chartering), Inc., Panama v. World Energy Sys. Assocs., Inc., 772 F.2d 802, 808 (11th Cir.1985). Therefore, we pause to consider this question in passing. Specifically, we address whether the FmHA's promulgation of the 1983 amendment adequately satisfies the mandates of the enabling act that it administers, the Housing and Community Development Amendments of 1978, 42 U.S.C. § 1480(g) (1988), as incorporated into the Housing Act of 1949, 42 U.S.C. § 1472 (1988).
 
 
 20
 As a plain interpretation of the language of Section 1480(g) discloses, the 1983 amendment to the tenant grievance and appeals procedure is in all respects consonant with relevant statutory requirements. Section 1480(g) provides that the Secretary of Agriculture has the power to issue regulations ensuring that, upon eviction, tenants
 
 
 21
 are given written notice of the reasons for ... [lease] termination and are provided at least an opportunity to appeal an adverse decision and to present additional information relevant to that decision to a person, other than the person making the original determination, who has authority to reverse the decision....
 
 
 22
 42 U.S.C. § 1480(g) (1988). The amended regulations, in turn, carry over the preexisting requirement that the terminating landlord provide written notice of the termination setting forth good cause for the action, see 7 C.F.R. § 1944.553(e) (1991), and further require judicial process such that the adversely affected tenant may present arguments to a judge who, obviously, has the power to reverse the decision of the landlord.[6] Id. § 1944.553(f). Selfhelp evictions or evictions for other than good cause, even where permitted by state law, are not allowed with respect to tenants of FmHA program housing.
 
 
 23
 The imaginative interpretation of the enabling statute's requirements urged by the appellees--which finds in the statute the requirements of a guarantee of discovery rights and a separate administrative appeal process, for example--arguably projects a picture of how a more wisely crafted statute might well have looked. Nevertheless, this expanded interpretation does not provide this court, as we assume the deferential posture mandated by Chevron, with the authority to reject an administrative action clearly supported by a permissible reading of the statute. Moreover, the legislative history that is explored extensively in appellees' brief is equally unavailing on this question. "Absent a clear indication of legislative intent to the contrary, the statutory language controls its construction." Ford Motor Credit Co. v. Cenance, 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981) (per curiam). Here, none of the traditional tools of statutory construction indicate that the statute means anything other than what it simply says.[7] See Pension Benefit Guar. Corp. v. LTV Corp., --- U.S. ----, ----, 110 S.Ct. 2668, 2677, 110 L.Ed.2d 579 (1990). Especially because "the regulations promulgated by the governmental body responsible for interpreting or administering a statute are entitled to considerable respect," we see no reason to venture into legislative sources extrinsic to a clearly worded statute as a basis for judicial reversal of this administrative action. Ford Motor, 452 U.S. at 158 n. 3, 101 S.Ct. at 2241 n. 3.
 
 
 24
 C. Whether the Regulation is Arbitrary and Capricious
 
 
 25
 The ground on which the district court ultimately invalidated the 1983 amendment was that the FmHA promulgated the amendment in a manner which violated the APA, relying on the familiar rule that requires courts to set aside agency rules which are, inter alia, promulgated through a procedure that is arbitrary and capricious. 5 U.S.C. § 706(2)(A) (1988). Taking the view that the FmHA had failed to consider legitimate concerns over the removal of evictions from grievance and appeals procedure, the district court announced that the "FmHA may attempt to re-promulgate the rule the Court finds invalid today; if it does, however, the agency must give serious consideration to all sides of the argument." Hussion, 741 F.Supp. at 1570. Although we do not disagree with the district court's finding that "[t]he administrative record is replete with legitimate concerns," id., we are persuaded, on the basis of the record as a whole, that the process culminating in the 1983 amendment withstands scrutiny under the standards of the APA. Our review of the data and FmHA's explanation for its action unambiguously establishes that the 1983 amendment is rational and based on a consideration of all relevant factors. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 42-43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). According to the undisputed facts in this case and the appropriate legal standards, the Agency is entitled to judgment as a matter of law. Cf. North Buckhead Civic Ass'n v. Skinner, 903 F.2d 1533, 1539 (11th Cir.1990).
 
 
 26
 As stated in Motor Vehicle Manufacturers Association, a number of factors guide our review.
 
 
 27
 Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.
 
 
 28
 463 U.S. at 43, 103 S.Ct. at 2867; see also Organized Fishermen, 775 F.2d at 1550. With reference to these considerations, the appellees defend the judgment of the district court on several grounds. They assert that the Agency, in the course of the rulemaking process, failed to consider the adequacy of state law to guarantee the rights of aggrieved tenants, failed to accord appropriate weight to adverse data about the actual burdens associated with the functioning of the pre-1983 grievance and appeals procedure, and failed sufficiently to respond to comments it had received which highlighted objections to the proposed change. None of these arguments, either in the form argued before us or as adopted by the district court, supports the district court's reversal of the FmHA's action when tested against the "highly deferential" standards applicable to judicial review of agency action. Organized Fishermen, 775 F.2d at 1550.
 
 
 29
 The district court, agreeing with appellees, found that "the final rule does not even contemplate that some tenants may not be afforded the due process guarantees secured by § 1480(g)." Hussion, 741 F.Supp. at 1568 (footnote omitted). This determination is belied by ample evidence in the record. In fact, the Agency responded to public comments criticizing its original formulation--which would have provided merely that the eviction must be "according to state law"--by amending the proposal specifically to require "judicial action" (along with imposing "material [lease] violation" and "good cause" criteria on the eviction). 7 C.F.R. § 1944.553(f) (1991). This revised formulation adequately answers concerns about self-help evictions (where state law permits them) or the rubber-stamping of unwarranted eviction decisions by state courts. As FmHA explained in promulgating the final rule:
 
 
 30
 The agency has addressed this issue by stipulating termination of tenancy and evictions are to be handled by judicial action pursuant to State or local law. The Agency determined that in the case of evictions or termination of tenants that the right [sic] of tenants are fully protected under State or local law when a Judicial Process is required.... [T]he [landlord must] advise a tenant, in a termination notice, that the tenant is entitled to a court proceeding pursuant to State or local law at which he or she may present a defense to the eviction. The [landlord] is prohibited from resort to "self-help" evictions or any non-judicial process, even where authorized by State or local law.
 
 48 Fed.Reg. 56,175, 56,176 (1983).[8]
 
 31
 To demonstrate the shortfall of the Agency's response, the district court cited additional objections to the Agency's proposed reliance on state judicial process, and found that "[a]t no place in the record does FmHA attempt to refute specific allegations concerning state laws made by opponents of the change." Hussion, 741 F.Supp. at 1568. Those other challenges, however, were grounded in due process interests not mandated by the statute authorizing the review process in the first place. Concerns about the adequacy of state law in the areas of discovery rights or the implied warranty of habitability, for example, simply do not command the attention of FmHA in administering Section 1480(g). To the extent that these challenges to the proposed rule illuminated "important aspects of the problem," moreover, we are unable to find on this record that the Agency's limited acknowledgment of general due process concerns evinces an "entire[ ] fail[ure]" to consider them. Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43, 103 S.Ct. at 2867. In short, we decline the appellees' invitation to require an agency to accord greater weight to aspects of a policy question than the agency's enabling statute itself assigns to those considerations.
 
 
 32
 There is similarly no basis for the district court's conclusion that the Agency's action ran "counter to the information provided." Hussion, 741 F.Supp. at 1568. Although the appellees cite empirical data arguably undercutting the Agency's apparent determination that the grievance and appeals procedure was duplicative and burdensome, none of the arguments before us vitiates the fact that the Agency had collected numerous complaints from FmHA project personnel expressing concerns about the difficulties and costs of the procedure in its pre-1983 form. The empirical data accumulated before the time of the proposed rulemaking do not disprove the premise of the FmHA change: duplication was inherent in the process because even with an administrative grievance procedure in place, either party could appeal the outcome of the FmHA grievance procedure to the courts. See 7 C.F.R. § 1944.558(b). As the agency has "suppl[ied] a reasoned analysis" supporting the elimination of duplicative aspects of the process, Lloyd Noland Hosp. & Clinic v. Heckler, 762 F.2d 1561, 1567 (11th Cir.1985), neither this court nor the district court is authorized to "substitute its judgment for that of the agency" merely because evidence exists which conflicts with the Agency's ultimate determination.[9] Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43, 103 S.Ct. at 2866.
 
 
 33
 We are unpersuaded by appellees' further arguments as to the adequacy of the FmHA's responses to comments that were critical of the proposed regulation. The APA does not require the Agency to respond to comments which, in essence, reflect a policy-based preference for the most exacting guarantees of due process over the interest shared by owners and other tenants in minimizing the cost and delay of good-cause evictions. "Under the 'arbitrary and capricious' standard of review, an agency is ... required to respond to significant comments that cast doubt on the reasonableness of the rule the agency adopts." Baltimore Gas and Elec. Co. v. United States, 817 F.2d 108, 116 (D.C.Cir.1987). Given that the significant objections raised by the amendment's opponents are, on the record, accounted for in the Agency's action and furthermore fall far short of indicating any clear error of judgment by the Agency, the arbitrary and capricious standard provides no basis to set aside the 1983 amendment.
 
 III. CONCLUSION
 
 34
 For the foregoing reasons, we find that the FmHA has satisfied the requirements of both Section 1480(g) and the APA in promulgating the 1983 amendment to its grievance and appeals procedure. Finding no merit in appellees' remaining arguments, we REVERSE the grant of appellees' motion for summary judgment by the district court, and REMAND for entry of judgment in favor of the appellants as to the issues addressed in this opinion.
 
 
 
 [1]
 Ms. Wright is a former named plaintiff who has moved out of the Douglass Village Apartments since the institution of this action
 
 
 [2]
 Clayton Yeutter and subsequently Edward Madigan, have been substituted for Mr. Lyng as parties to this action pursuant to Fed.R.Civ.P. 25(d)(1)
 
 
 [3]
 The action also named Douglass Village, Ltd.; Interfaith, Inc. (d/b/a Douglass Village Apartments); Interfaith Management Inc.; and Eugene Bowens, President of Interfaith Inc.; as defendants, seeking to compel them to provide grievance hearings, to enjoin them from charging excessive late fees, and to enjoin them from retaliating against the named plaintiffs. After all other issues were settled with respect to these defendants, the district court ruled in favor of the plaintiffs on the question concerning the amount of the late fees charged. This appeal does not involve these legal theories or defendants
 
 
 [4]
 Two district courts have also viewed the regulation with approval in actions subsequently vacated and dismissed as moot by courts of appeal. See Baer v. Lyng, No. 2-87-0021 (M.D.Tenn. Mar. 13, 1987) (order), vacated and dismissed as moot, No. 87-5396, 1988 U.S.App. LEXIS 7143 (6th Cir. Feb. 8, 1988); Kennedy v. Block, 606 F.Supp. 1397 (W.D.Va.1985), vacated and dismissed as moot, 784 F.2d 1220 (4th Cir.1986)
 
 
 [5]
 It appears that the district court confined its review of the rulemaking process to materials appearing in the revised administrative record ("RAR"), even though the appellees were permitted discovery of other documents after the filing of the RAR and argued on the basis of this information before the court. See Hussion, 741 F.Supp. at 1566 (referring to the court's "thorough review of the revised administrative record"). Without deciding whether the RAR should have been found incomplete below, we note that the information and documents omitted therefrom and now relied upon by the appellees do not provide grounds to alter the outcome reached here. See, e.g., infra note 9
 
 
 [6]
 In suggesting that the opportunity to defend an eviction action in state court does not constitute an "appeal" of the eviction decision, appellees advance an unavailing semantic distinction. They note that a state court judge decides only the issue of possession, and therefore technically lacks authority to "reverse" the decision to evict. Common sense alone defeats this argument. It is elementary that the state court has authority to prevent the eviction, and hence provides a meaningful forum in which the eviction decision may be reviewed
 
 
 [7]
 The district court correctly noted that, although a more exacting version of Section 1480(g) was initially proposed in the Senate, the version proposed by the House Conference Committee and actually passed by both houses was conspicuously less demanding on the agency. Compare S.Rep. No. 871, 95th Cong., 2d Sess. 89 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 4773, 4860 (requiring administrative appeals procedure and extensive procedural rights) with H.R.Conf.Rep. No. 1792, 95th Cong., 2d Sess. 88-89 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 4872, 4908-09 (providing only written notice and an opportunity to appeal to a different decisionmaker). On this basis, we cannot infer that Congress meant to include sub silentio what was deliberately omitted from the statute. See Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 200, 95 S.Ct. 392, 400, 42 L.Ed.2d 378 (1974) (reasoning that deletion of proposed language "strongly militates against a judgment that Congress intended a result that it expressly declined to enact")
 
 
 [8]
 The notice requirement, which requires the landlord to advise the tenant of the right to present a defense in court, also provides a measure of assurance that the state courts which hear eviction actions will be notified by the tenant-defendant that FmHA regulations are in the picture
 
 
 [9]
 The appellees direct our attention to a study compiled by M.K. Smith, a student-employee of FmHA when the paper was presented to the agency in December 1981, entitled "Study of Farmers Home Administration Tenant Grievance and Procedure." This study was mentioned but apparently not directly relied upon by the district court. Appellees argue that the Agency improperly ignored the study, which contained empirical evidence--assertedly adverse to the Agency's decision--on the number of grievances actually filed and the costs of the administrative appeals process. Although the study is not incorporated in the RAR, we pause to note that the study is capable of contrary interpretation, and moreover need not have been made available during the commentary period as it had been incorporated into the Agency's institutional knowledge. See Action for Children's Television v. FCC, 564 F.2d 458, 471 & n. 22 (D.C.Cir.1977) (cited in Brewer, 945 F.2d at 458 n. 8)