SEABULK TRANSMARINE I, INC., et al., Plaintiffs,

v.

Elizabeth H. DOLE, et al., Defendants.

Civ. A. No. 84–1718.

United States District Court, District of Columbia.

Oct. 9, 1986.

Ronald D. Eastman, Washington, D.C., for plaintiffs.

John Bayly, Asst. U.S. Atty., Washington, D.C., for defendants.

JACKSON, District Judge.

This is an action by corporate operators of U.S. flag vessels, specially designed to transport corrosive liquid chemicals in bulk in foreign commerce, to review and set aside a decision of the Maritime Subsidy Board ("Board"), a subdivision of the Maritime Administration of the Department of Transportation, to deny them a subsidy for an additional crew member aboard the vessels. Subsidies are discretionary with the Board under the Merchant Marine Act of 1936 (the "Act"), as amended, 46 U.S.C. §§ 1101–1295 (1982).

Plaintiffs allege that the Board's decision is arbitrary, capricious, an abuse of its discretion, and otherwise not in accord with law, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (1982). They pray that the Board be ordered to subsidize their addition of a 17th crew member to the current complement of 16 presently authorized for subsidy by contracts made by plaintiffs' predecessors with the Board in October, 1978. Defendants Secretary of Transportation and various subordinate officials of the Maritime Administration ("defendants") have moved to dismiss the complaint on the ground that the subsidies authorized by the Act are, as

noted, committed thereby to agency discretion which was, in the circumstances of this case, properly exercised, and that the Board correctly found, in December, 1981, that it lacked the authority to modify the contracts to provide for an additional subsidy.

In support of their motion defendants have filed with the Court what they represent to be the administrative record to be reviewed, from which, however, they have redacted certain portions they claim to be privileged as being expressions of the "deliberative process" which need not be revealed. Plaintiffs have, in the meantime, filed a motion to compel production of the redacted materials, specifically, two Maritime Administration staff memoranda dated March 6 and 10, 1981, which, plaintiffs say, they have divined to have recommended in favor of the subsidy, and defendants have countered with a motion for a protective order. In addition, both sides have filed motions for summary judgment. For the reasons hereinafter set forth the Court will deny defendants' motions to dismiss and for summary judgment, grant in part and deny in part plaintiffs' motion to compel and defendants' motion for a protective order, grant plaintiffs' summary judgment motion in part, and remand to the Board for further proceedings.

## I.

The adverse agency decision of which plaintiffs seek review is an order of the Maritime Subsidy Board of December 30, 1981, denying an appeal from the Board's earlier refusal to increase the operating differential subsidy for the crews of plaintiffs' vessels to defray the cost of adding a single deck engineer to assist in the maintenance of complex chemical-handling equipment not found on earlier models of similar vessels intended for the carriage of less baneful cargoes. Defendants assert, however, that judicial review of the denial is improper, because the Board's action is "committed to agency discretion by law" within the meaning of section 701(a)(2) of the APA.

Neither the original Merchant Marine Act of 1936 nor the 1970 amendments contain an express preclusion of judicial review of the Board's subsidy decisions; any such intent on the part of Congress would therefore have to be implied. In the absence of a clear showing of legislative intent to the contrary, federal courts generally have jurisdiction to review any agency action. *See Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977) (jurisdiction to be found under 28 U.S.C. § 1331 (1982)); *see also Abbott Laboratories v. Gardner*, 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). And the APA's "committed-to-agency-discretion-by-law" exception, in particular, is to be construed very narrowly, applying only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Overton Park*, 401 U.S. at 410, 91 S.Ct. at 820 (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)).

Congress undoubtedly did intend the Board to possess and to exercise considerable discretion with respect to the subsidies available to the U.S. maritime industry under the Act. Section 207 of the Act authorizes the Board and the Secretary of Transportation to "enter into such contracts ... and ... make such disbursements as may, in its or his discretion, be necessary to carry on the activities authorized" by the Act. 46 U.S.C. § 1117. *See also* S.Rep. No. 713, 74th Cong., 1st Sess. 4 (1935); H.R.Rep. No. 1277, 74th Cong., 1st Sess. 2 (1935); *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 585, 100 S.Ct. 800, 808, 63 L.Ed.2d 36 (1980). Thus, in *American President Lines v. Federal Maritime Bd.*, 112 F.Supp. 346 (D.D.C.1953), the court declared that "the granting or withholding of a subsidy is clearly committed by law to agency discretion," *id.* at 348, holding judicial review of an award of subsidies to the plaintiff's competitors to be limited to whether the Board had com-

plied with the procedural requirements of the Act.

A distinction is drawn, however, between *pre-construction* Board decisions to grant or withhold an operating subsidy, and subsequent actions taken after an operator's own funds have been committed to the enterprise and a contract made. In *Moore-McCormack Lines, Inc. v. United States*, 413 F.2d 568, 188 Ct.Cl. 644 (1969), the Court of Claims reviewed the legislative history of the Merchant Marine Act and concluded that Congress had contemplated such a dichotomy:

> We surmise that the reason for [the] lack of interest in court review of determinations of construction differential and of the initial operating differential was that it was thought that neither decision would put the shipowner in a vise. In each instance he could protect himself by refusing to enter into a contract on that basis, choosing to build his ship abroad or to take his vessel to foreign registry; in neither case would he be bound by any agreement prior to the determination of the amount of subsidy to be allowed, and he could make his election freely after that administrative decision was made known. Everyone seemed to realize, however, that there had to be some means for adjusting the continuing operating subsidy to meet changed conditions, and all were sensitive to the possibility of unfairness to the contract-bound operators through arbitrary agency redetermination of the annual operating differential.

*Id.* 413 F.2d at 577. The court concluded that:

> The history of the Merchant Marine Act bolsters the conclusion that no implied preclusion-of-review should be read into the subsidy sections.... The Congress

did appear to reject the idea of full determination by the courts of these complex subsidy awards, but it also seemed to contemplate that the judiciary would be available to remedy, at the very least, "abuse of discretion" or "gross abuse of discretion."

*Id. See also Pacific Far East Line, Inc. v. Federal Maritime Bd.*, 275 F.2d 184 (D.C. Cir.), *cert. denied*, 363 U.S. 827, 80 S.Ct. 1597, 4 L.Ed.2d 1523 (1960). This Court is likewise of the opinion that the Board's refusal to reconsider the amount of an operating differential subsidy when good cause is shown by the operators is subject to review for abuse of discretion, no matter how much autonomy the Board may have at the beginning of a subsidized venture.

▌ In its original denial of plaintiffs' request for an additional subsidy, in late April, 1981, the Board stated simply that it believed itself to be without authority "to reconsider the manning determination" made earlier by the parties prior to entry into the contracts of October, 1978. In its order denying plaintiffs' appeal, the Board was more explicit. It stated that § 603(c)(1)(A)(i), 46 U.S.C. § 1173(c)(1)(A)(i), added by amendment to the Act in 1970, precluded payment of an *operating* differential subsidy for crew members who had been found "prior to the award" of a contract for a ship *construction* differential subsidy (as plaintiffs here also received) to be unnecessary for the efficient and economical operation of such vessel.[1] Citing to two portions of the legislative history of the 1970 amendments which indicated an intent to end the practice of post-construction haggling between vessel operators and the Board as to a ship's proper complement, the Board concluded that Congress had henceforth prohibited any upward ad-

---

**1.** The 1970 amendments to the Act implemented an index system for determining wage subsidies, replacing the earlier mechanism which required the Board to determine whether agreements resulting from collective bargaining were "fair and reasonable." Under the index system, the amount of wage subsidy, the purpose of which is to enable domestic operators of cargo vessels to compete more effectively with foreign opera-

tors, is determined in part by the difference between "subsidizable wage costs" of U.S. officers and crews, and foreign crew costs. 46 U.S.C. § 1173(b). Subsidizable wage costs are defined in section 603(c)(1)(A) to include all items of expense incurred under collective bargaining and other employment agreements, with certain exceptions.

justment in subsidizable ship's company once the initial complement had been agreed to, whether or not the Board might be sympathetic to it.[2] According to the Board, an operator is expected at his peril to calculate accurately in advance the ship's complement he will need to man the vessel being built with a subsidy, even as to new, untested high-technology designs. If the Board in its discretion agrees, that figure will be incorporated in the companion operating subsidy contract which, however, once made, remains binding on the parties for the duration, without prospect of change absent a corresponding change in circumstances such as a reconstruction of the vessel.

If, however, Congress did intend to deprive the Board of power to revise manning subsidies, upward or downward, by the 1970 amendments to the Act, the fact is belied by its having left untouched section 606(1) of the original Act, 46 U.S.C. § 1176(1), which provides, in pertinent part:

> Every contract for an operating-differential subsidy under this subchapter shall provide (1) that the amount of the future payments to the contractor shall be subject to review and readjustment from time to time, but not more frequently than once a year, at the instance of the Secretary of Transportation or of the contractor. If any such readjustment cannot be reached by mutual agreement, the Secretary of Transportation, on his own motion or on the application of the contractor, shall, after a proper hearing, determine the facts and make such readjustment in the amount of such future payments as he may determine to be fair and reasonable and in the public interest.... His decision shall be based upon and governed by the changes which may have occurred since the date of the said contract, with respect to the items theretofore considered and on which such contract was based, and other conditions

affecting shipping, and shall be promulgated in a formal order, which shall be accompanied by a report in writing in which the Secretary of Transportation shall state his findings of fact....

The Board explains that section 606(1) is similarly limited by the 1970 amendments, and applies only in the case of vessels built prior to 1970, citing as authority one of its own decisions, *States Steamship Co.-Tentative ODS Rates*, 14 S.R.R. 241 (MSB 1973), for which, as the agency responsible for the administration of the Act, it claims an entitlement to great weight.

Whether the Board's single decision in *States Steamship Co.* in 1973 can truly be said to be its own definitive interpretation of the Act as amended, however, is questionable, because in each of its October, 1978, contracts with plaintiffs there appears an Article I-5 entitled *"Revision of Subsidy,"* which provides, in its entirety:

> (a) Pursuant to section 606(1) and other provisions of the Act, the amount of future payments to the Operator hereunder shall be subject to review and readjustment from time to time, but not more frequently than once a year, at the instance of the United States or the Operator.
>
> (b) Pending the establishment and determination of new final operating-differential subsidy rates for any period subsequent to the effective date of this Agreement, as a result of any review as contemplated in paragraph (a) of this Article I-5, the Operator shall receive payments on account computed on the basis of the then current rates (whether tentative or final) determined and proffered to the Operator.

If, indeed, the Board believed adjustments of operating subsidies to have been absolutely forbidden by the 1970 amendments to the Act except as to vessels in operation prior to 1970, it is difficult to discern its

---

**2.** Plaintiffs suggest that the haggling which the 1970 amendments were designed to settle had arisen as a result of the Board's efforts to *reduce* subsidies once tendered upon its belated perception that certain billets were "unnecessary" for the efficient and economical operation of vessels already under construction in which substantial investment, albeit subsidized, had been made by the prospective operators.

purpose in including such a provision as Article I–5 in subsidy contracts entered into nearly a decade later. On the record before it the Court rejects defendants' contention that Congress has deprived them of legislative authority to entertain plaintiffs' request for a modification of the subsidies accorded them by the contracts of October, 1978.

## II.

■ Assuming that the Court finds the Board to have retained discretionary authority to increase subsidies, defendants then assert that plaintiffs have presented neither evidence of cognizable changes in circumstances to warrant the addition of a deck engineer to ship's company now, nor evidence that the parties were mutually mistaken in settling upon 16–member crews in October, 1978, which might justify a reformation of the contracts. Having no such evidence before it, defendants contend, the Board properly made use of its discretion to refuse to augment the subsidy.

Whether or not evidence of either description is necessary to an exercise of its discretion, however, the Court does not find from such of the administrative record as it has before it that the Board has, in fact, exercised any discretion at all. The record is barren of any information whatsoever as to how the parties originally arrived at the 16–member figure for ships' complements, and the information it does contain, devoid of that which might have been imparted by the eviscerated staff memoranda, suggests only that plaintiffs believe operation of the vessels without a deck engineer to be inordinately dangerous, whereas the Board thinks it would be wastefully costly to add one. If there is a basis for defendants' assertion that plaintiffs' request was entertained in good faith and found wanting on its merits by the Board, it is not to be found in either the administrative record or the record now before this Court.

## III.

Defendants concede that the staff memoranda expurgated from the administrative record were among the materials which were before the Board when it passed upon plaintiffs' request. It is, of course, the general rule that judicial review of administrative action is to take place upon the "whole record" compiled by the agency, not merely those portions of it which the agency chooses to submit for review. *Overton Park*, 401 U.S. at 419, 91 S.Ct. at 825; *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 793 (D.C.Cir.1984); *Envtl. Defense Fund, Inc. v. Blum*, 458 F.Supp. 650, 661 (D.D.C.1978). On the other hand, it is also generally true that, to promote freedom of expression among civil servants, the government is entitled to invoke a privilege to shield from disclosure those materials which reflect advisory opinions, recommendations, and deliberations comprising the grist of the process by which governmental decisions and policies are made. *See, e.g., EPA v. Mink*, 410 U.S. 73, 86–87, 93 S.Ct. 827, 835–36, 35 L.Ed.2d 119 (1973); *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 183–86, 95 S.Ct. 1491, 1499–1501, 44 L.Ed.2d 57 (1975); *McClelland v. Andrus*, 606 F.2d 1278, 1286–87 (D.C.Cir.1979). At the discoverable end of the spectrum are found those "unevaluated factual reports or summaries of past administrative determinations" which, although "pre-decisional," are not privileged merely because they are so. *Vaughn v. Rosen*, 523 F.2d 1136, 1143–45 (D.C.Cir.1975). At the other are those materials which would compromise the confidentiality of the judgmental element which arises in the course of selecting and emphasizing certain facts at the expense of others. *Lead Indus. Ass'n v. OSHA*, 610 F.2d 70, 85–86 (2nd Cir.1979).[3]

---

**3.** The Court assumes without deciding that the "deliberative process" privilege attaching to internal government memoranda and the like, which are thereby rendered immune from discovery in civil litigation with the government, is co-extensive with Exemption 5 of the Freedom

■ While observing that indiscriminate use of the "deliberative process" privilege to justify expurgation of administrative records may frustrate the process of judicial review of agency action under the APA, the Court finds it unnecessary at this stage here to make findings as to the missing staff memoranda either way, for Fed. R.Civ.P. 37 affords a sufficient alternative to production of the memoranda themselves. Should defendants fail to include them *in full* in the administrative record, they will be deemed, for purposes of this case, to have recommended in favor of the additional subsidy plaintiffs seek, whether they do, in fact, or not.

It is, therefore, this 9th day of October, 1986,

ORDERED, that defendants' motions to dismiss and for summary judgment are denied; and it is

FURTHER ORDERED, that plaintiffs' motion to compel discovery and defendants' motion for a protective order are each granted in part and denied in part, and defendants shall file, as a part of the administrative record herein, the unredacted memoranda of the Maritime Administration's Crew Committee to the Assistant Administrator for Maritime Affairs of March 6, 1981, and of the Director of the Office of Chief Operating Costs to the Board of March 10, 1981, within ten (10) days, failing which it shall be taken as established that their tenor and substance supported plaintiffs' request and were contrary to the Board's denial thereof; and it is

FURTHER ORDERED, that plaintiffs' motion for summary judgment is granted in part, and the case is remanded to the Maritime Subsidy Board for a full discretionary reconsideration of plaintiffs' request for wage subsidies for a 17th crew member in light of those circumstances which might warrant the same in accordance with Section 606(1) of the Act; and it is

of Information Act, 5 U.S.C. § 552(b)(5) (1982), although considerations giving access to them

FURTHER ORDERED, that this case is scheduled for a status call on January 9th, 1987, at 9:30 a.m.

may vary. *See McClelland,* 606 F.2d at 1287 n. 54.