**MIAMI NATION OF INDIANS OF INDIANA, et al., Plaintiffs,**

v.

**Bruce BABBITT, et al., Defendants.**

No. 3:92–CV–586RM.

United States District Court, N.D. Indiana, South Bend Division.

Oct. 11, 1996.

Arlinda F. Locklear, Jefferson,MD, David L. Kiley, Sr., Albert C. Harker, Kiley Osborn Kiley Harjer, Marion, IN, for Plaintiffs.

Scott Keep, Dept. of the Interior, Div. of Indian Affairs, Washington, DC, R. Anthony Rogers, U.S. Dept. of Justice, Environmental & Natural Resources Div., General Litigation Section, Washington DC, Barbara N. Coen, Dept. of the Interior, Div. of Indian Affairs, Washington DC, for Defendants.

*MEMORANDUM AND ORDER*

MILLER, District Judge.

The plaintiffs (collectively the "Miamis") have filed a motion to "complete and supplement the administrative record and to allow expert testimony," and a request for oral argument on the motion. The defendants (collectively the "United States") oppose the motion with respect to the administrative record and expert testimony, and have not addressed the request for oral arguments. Since the parties' briefs sufficiently apprised the court of their respective positions, the court denies the request for oral argument. For the following reasons, the court grants in part the Miamis' motion to complete and supplement the administrative record and to allow expert testimony.

## I. *Background*

The Miami Indian tribe (the "Miamis") historically lived in the central and northern regions of Indiana. From 1795 to 1840, the Miami's entered into several treaties with the United States. As a result of one of those treaties, the Miamis split into two groups, with one group relocating to Kansas and the other remaining in Indiana. Generally, the United States interacted with the Indiana Miamis as covered under the United States' trust responsibilities. *See, e.g., Miami Nation v. Lujan,* 832 F.Supp. [253,] at 253–255 [ (N.D.Ind.1993) ] (discussing history of relations between the Miamis and the United States). In 1897, however, Assistant Attorney General Willis Van Devanter decided that the Indiana Miamis no longer were tribal Indians, and thus no longer were covered by the United States' trust responsibilities. *See id.* at 255. The Secretary of the Interior (the "Secretary") approved the decision and withdrew acknowledgment of the Indiana Miamis; the Department of the Interior (the "Department") has refused to acknowledge the Indiana Miamis as an Indian tribe since then.

Until 1978, the Department made its decisions whether to acknowledge an Indian tribe on a case-by-case basis. *See* 25 Fed.Reg. 39,361 (1978). In 1978, the Department promulgated regulations providing a procedure for acknowledging the existence of Indian tribes. *See* 25 C.F.R. Part 83 (1978)[1] (the "1978 regulations"). On March 25, 1980, the Miamis filed a petition for federal acknowledgment as an Indian tribe pursuant to these regulations. On July 19, 1990, the Assistant Secretary of the Interior published his proposed finding that the Miamis do not meet the political influence and community criteria of the acknowledgment regulations. 55 Fed.Reg. 29,423 (1990). On June 18, 1992, the Assistant Secretary published his final determination that the Miamis do not exist as an Indiana tribe and, therefore, are not entitled to a government-to-government relationship with the United States. 57 Fed.Reg. 27,312 (1992).

The Miamis then filed a four-count complaint in this court. Count 1 sought a ruling that the Secretary of the Interior's decision withdrawing federal recognition of the Indiana Miamis in 1897 was *ultra vires;* the court ruled that the applicable statute of limitations barred that claim. *Miami Nation v. Lujan,* 832 F.Supp. at 257. Count 4 of the complaint ... seeks review of the Department's application of the acknowledgment regulations to the Miamis.

Counts 2 and 3 of the complaint challenge the validity of the Department's 1978 regulations. In Count 2, the Miamis allege that the defendants exceeded their congressional authorization in issuing the regulations by allegedly imposing stricter requirements upon tribes seeking recognition after 1978 than those imposed before 1978. In Count 3, the Miamis allege that the regulations are invalid because they fail to define key terms or specify a burden of proof, because they provide no mechanism for independent review or administrative appeal, and because the regulations treat Indian tribes recognized before 1978 dif-

---

**1.** 25 C.F.R. Part 83 was revised in 1994. Both parties agree that this cause pertains solely to the regulations as they appeared from 1978 until the 1994 revision. Unless otherwise specified, all references to 25 C.F.R. Part 83 are to the 1978 version at issue in this cause.

ferently than those petitioning for tribal status after 1978.

The court granted the United States' motion for summary judgment on Counts 2 and 3 on April 24, 1995. *Miami Nation of Indians of Indiana v. Babbitt*, 887 F.Supp. 1158 (N.D.Ind.1995).

The Miamis and the United States now find themselves locked in a dispute over discovery and the appropriate scope of the administrative record. Accordingly, the Miamis seek an order: (1) requiring that the government include in the administrative record all materials the agency considered in deciding the Miamis' petition for recognition, including drafts, notes, and logs prepared by Branch of Acknowledgment and Research ("BAR") staff and contract consultants and those guidelines, internal directives, and manuals applicable to the Miami petition; (2) authorizing depositions and setting a hearing to take testimony from BAR staff, tribal consultants, and a "teaching" expert to explain the technical, complex issues involved in this matter and the decision-making process in this case; and (3) requiring Tribal and court access to the records from other government recognition decisions.

## II. *Completion of Administrative Record*

▉▉▉ Under the Administrative Procedure Act ("APA"), the court ultimately reviews the agency's action in this case to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA directs that "[i]n making the foregoing determination, the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The parties dispute whether the agency has produced the "whole record."

Generally, judicial review of agency action is limited to review of the administrative record. *Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir.1986). In *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), the Supreme Court emphasized that when reviewing administrative decisions:

"[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court.

*Id.* at 743–44, 105 S.Ct. at 1607 (*quoting Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)).

*Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir.1988). "The complete administrative record consists of all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir.1993).

An agency may not unilaterally determine what constitutes the Administrative Record, nor can the agency supplement the Administrative Record submitted to the district court with post hoc rationalizations for its decision. However, the designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity. The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary. When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question.

*Id.* at 739–740.

Having the "whole record" before it is crucial to the court's review under the APA. The reason is that the court cannot determine whether the final agency decision reflects the rational outcome of the agency's consideration of all relevant factors when the court has no idea what factors or data were in fact considered by the agency. In assessing whether the agency's action was arbitrary and capricious, the court must test the action against the "full administrative record that was before the (agency official) at the time he made the decision."

\* \* \* \* \* \*

In the present case, it appears that the exhibits attached to the federal defendants' motion do not comprise the entire administrative record. Further, it would be improper for this court to allow the federal defendants to determine unilaterally what shall constitute the administrative record and thereby limit the scope of the court's inquiry. For that reason, plaintiffs are entitled to discover any materials, including internal memoranda, guidelines, or hearing transcripts, that are necessary to complete the administrative record.

The federal defendants correctly observe that they may be permitted to offer affidavits or live testimony in order to explain the record, but that the court may not engage in a de novo review of the administrative actions. It bears emphasis, perhaps, that this court intends to review the federal agency decisions under the narrow standards of § 706 of the APA rather than to embark on a full-blown review of the agency actions. Such limited review under the APA is inappropriate, however, in the absence of the full administrative record.

*Lloyd v. Illinois Regional Transp. Authority,* 548 F.Supp. 575, 590–591 (N.D.Ill.1982).

In any event, "[t]he court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *Bar MK Ranches v. Yuetter,* 994 F.2d at 740.

■ The Administrative Record in this case, as described by the United States, includes "supporting materials which form the basis for the decisions" and "material relied upon for making the final determination." The Record specifically does not include "preliminary drafts of reports and decisions, nor does it include internal communications and comments on such drafts or on work plans. It does not include personal notes and individual journals incidental to the preparation of the decisions.... It does not include preliminary drafts and communications and comments by the Branch of Acknowledgment and Research on such drafts."

The Miamis agree with the United States' summary of the instant dispute: "The crux of the dispute between the parties here is that the Miami seek to inquire into the decision making *process,* not the merits of the ultimate decision." (emphasis in original). The United States contends that Administrative Record should consist of material relevant only to the merits of the agency's decision; the Miamis contend that the Record should include material relevant to the process of making that final determination.

■ The court agrees with the Miamis. The court's obligation when reviewing the agency's decision under the APA is to determine whether the decision was arbitrary and capricious.

Under this standard, our sole task is to determine "whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). The "arbitrary, or capricious" standard of review is a deferential one which presumes that agency actions are valid as long as the decision is supported by a "rational basis." *Western & Southern Life Ins. Co. v. Smith,* 859 F.2d 407, 410 (6th Cir.1988); *see also Kisser v. Cisneros,* 14 F.3d 615, 618 (D.C.Cir.1994) (review is "highly deferential"); *Hussion v. Madigan,* 950 F.2d 1546, 1550 (11th Cir.1992). Although the agency's decision is entitled to a presumption of validity, we must nevertheless engage in a "substantial inquiry," or in other words, "a thorough, probing, in-depth review." *Citizens to Preserve Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823.

*Pozzie v. United States Dep't of Housing and Urban Development,* 48 F.3d 1026, 1029 (7th Cir.1995). The arbitrary and capricious standard, therefore, "focuses on the rationality of an agency's decision making process rather than on the rationality of the actual decision." *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560, 1575 (10th Cir.1994); *see also Thompson v. Dep't of the Treasury,* 533 F.Supp. 90, 97 (D.Utah 1981) ("The essence of judicial review of administrative action is scrutiny of the reasoning process of the decision maker.").

The Miamis contend that the administrative record is incomplete because BAR's field

work and data collection was flawed, because the government did not adequately respond to the evidence provided by the Miamis, because the agency's decision with respect to the Miamis was inconsistent with other tribal recognition decisions, and because it is unclear what internal guidelines, directives, or manuals were used in the government's evaluation of the Miamis' petition. The Miamis thus seek inclusion in the administrative record of: (1) draft reports, including (a) the draft reports of Dr. Susan Greenbaum, an anthropologist contracted by the United States to work on the Miami petition, and (b) draft reports produced by BAR; (2) BAR notes and logs; and (3) BAR guidelines, directives, and manuals.

The United States objects that none of these materials fall into the three permissible exceptions to the rule that the court must not review matters outside the administrative record, citing *Franklin Savings Assoc. v. Director, Office of Thrift Supervision,* 934 F.2d 1127, 1137 (10th Cir.1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992). The Miamis correctly respond that they do not seek supplementation of the administrative record, but rather they seek to complete the current record to include materials that should have been there from the start.

■■■ The United States also objects that it should not have to include in the administrative record all notes, personal logs and working papers, arguing that these items are not part of the administrative record unless they were reviewed in some fashion by the ultimate decision maker, who in this case was the Assistant Secretary of Indian Affairs. However, "a document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record." *Clairton Sportsmen's Club v. Pennsylvania Turnpike Commission,* 882 F.Supp. 455, 464 (W.D.Pa.1995). Further, the United States already has included "extensive field notes and logs of field interviews, handwritten notes and data, and certain other notes and analyses" in the administrative record. The inclusion of these materials either belies the assertion that the Assistant Secretary only reviewed limited materials in rendering a decision, or suggests that the United States included these materials even though they never crossed the Assistant Secretary's desk. In any event, it supports the conclusion that the notes, logs, etc., should not be excluded across the board.

The United States also objects to the Miamis' request that the administrative record be completed with copies of BAR guidelines, directives, and manuals that were used by the agency to interpret the recognition procedures or regulations. The United States asserts that so sweeping a request would require the addition of "historical treatises and articles written by individuals which do not reflect the positions of the Department and which do not even mention the Miamis." The Miamis contend that they are "entitled to discovery of all materials relevant to the agency's contemporaneous construction of the regulations." *Tenneco Oil Co. v. Dep't of Energy,* 475 F.Supp. 299, 318 (D.Del.1979) ("The internal memoranda, directives and guidelines generated and disseminated at a variety of levels are proper items of discovery."). The court views this as the better position. The administrative record is to consist of "all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter,* 994 F.2d at 739. If the Department or BAR directly or indirectly considered any guidelines, directives, or manuals, those materials should be included in the record.[2] *See also Lloyd v. Illinois Regional Transp. Authority,* 548 F.Supp. 575 at 591 (plaintiffs are entitled to discovery of "any materials, including internal memoranda, guidelines, or hearing transcripts, that are necessary to complete the administrative record.").

■■■ Finally, the United States also objects that some materials should not be included in the administrative record because they are covered by the deliberative process privilege. For the deliberative process privilege to apply to a document, the document

**2.** Of course, with respect to the historical treatises, etc., the United States could include only those portions of such documents that were considered, either directly or indirectly.

must be "pre-decisional" and "deliberative." The purpose of the privilege "is to prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29.

The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–152, 95 S.Ct. 1504, 1516–1517, 44 L.Ed.2d 29 (1975). Since frank discussion of legal and policy matters is essential to the decision making process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure. *Id.* at 151, 95 S.Ct. at 1516–17. Communications made subsequent to an agency decision are, however, not similarly protected. *Id.* at 152, 95 S.Ct. at 1517. The deliberative process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality. *Cf. Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980) (the privilege should be applied "as narrowly as consistent with efficient government operation"); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 545 (D.C.Cir.1977).

*United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.1993).

The court is not, unfortunately, currently able to determine which, if any, of these materials may be covered by the deliberative process privilege. Although the United States has the initial burden of demonstrating that a certain document is protected by privilege, it has not made the objection with respect to specific documents. Rather, it has merely offered to provide the documents for an *in camera* review. The government's lack of specific objection could be construed as a waiver of its claim to privilege. *See Mary Imogene Bassett Hosp. v. Sullivan*, 136 F.R.D. 42, 44 (N.D.N.Y.1991) ("The

agency bears the burden of establishing the applicability of the privilege in a given case."); *id.* ("an agency must also meet certain procedural requisites when invoking the privilege: First, the claim of privilege must be lodged by the head of the agency, or by a high-level subordinate/delegatee, 'after personal consideration of the allegedly privileged nature of the information.' Second, the claim of privilege 'must specifically designate and describe the information that is purportedly privileged.' Third, the agency must provide 'precise and certain" reasons for preserving the confidentiality of the requested information.' ") (*quoting Mobil Oil Corp. v. Department of Energy*, 520 F.Supp. 414, 416 (N.D.N.Y.), *rev'd on other grounds*, 659 F.2d 150 (Temp.Emer.Ct.App.), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981)).

With this in mind, the court grants the Miamis' motion to complete the administrative record. The court agrees that, in the context of this litigation, and in view of the court's role in reviewing the decision making process of the agency under the APA, the administrative record is currently incomplete. The United States is directed to complete the administrative record by adding to it all materials considered by the agency in deciding the Miami petition for recognition not already included therein, including: (1) draft reports, including (a) the draft reports of Dr. Susan Greenbaum, and (b) draft reports produced by BAR, including draft reports prepared by Dr. George Roth; (2) BAR notes and logs; and (3) BAR guidelines, directives, and manuals.[3]

To the extent the United States seeks to assert the deliberative process privilege with respect to any of these materials, the court affords the opportunity to seek a protective order in that regard. The United States is expected to specify which materials it contends the deliberative process privilege protects with specificity, in the spirit of Fed.

---

**3.** The Miamis also ask that the United States be required to formulate a chronology of events regarding the Miami petition, and then insert that chronology into the administrative record. The Miamis offer no support for this unique request, and the United States vehemently objects. The court agrees with the United States that it should not be required to create the chronology. The administrative record is to consist of those materials relied upon by the United States in deciding the Miamis' petition; any chronology created now would not be something relied on when making the decision.

R.Civ.P. 26(b)(5). The court assumes that the United States will carefully consider and select which materials it contends are so privileged. *See, e.g., Seabulk Transmarine I, Inc. v. Dole,* 645 F.Supp. 196, 201 (D.D.C. 1986) ("Indiscriminate use of the 'deliberative process' privilege to justify expurgation of administrative records may frustrate the process of judicial review of agency action under the ADA.").

### III. *Supplementation of Administrative Record*

 In addition to their request to complete the administrative record, the Miamis seek to supplement the record because "even the complete administrative record will not be sufficient to allow appropriate review of the Miami decision." Thus, the Miamis seek to supplement the record by taking testimony from BAR staff, tribal consultants, and a "teaching" expert. The Miamis request the court to hold a "limited" evidentiary hearing[4] at which these witnesses would testify, but only for the limited purpose of explaining the administrative record, and not to adduce new factual material. The Miamis also seek to supplement the record by the addition of the records of all other BAR decisions of tribal recognition petitions.

As noted, the court's review is generally limited to the "whole record." However,

> certain circumstances may justify expanding review beyond the record or permitting discovery. *See, e.g., Public Power Council v. Johnson,* 674 F.2d 791, 793 (9th Cir. 1982). The district court may inquire outside the administrative record when necessary to explain the agency's action. *Id.* at 793–94. When such a failure to explain agency action effectively frustrates judicial review, the court may "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." *Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). The court's inquiry outside the record is limited to determining whether the agency has considered all relevant factors or has explained its course of conduct

or grounds of decision. [*Earth v. Hintz,* 800 F.2d 822, 829 (9th Cir.1986)].

The district court may also inquire outside of the administrative record "when it appears the agency has relied on documents or materials not included in the record." *Id.* In addition, discovery may be permitted if supplementation of the record is necessary to explain technical terms or complex subject matter involved in the agency action. *Id.*

*Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988); *see also Franklin Savings Assoc. v. Director, Office of Thrift Supervision,* 934 F.2d 1127, 1137 (10th Cir. 1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992) (same factors); *Sokaogon Chippewa Community (Mole Lake Band of Lake Superior Chippewa) v. Babbitt,* 929 F.Supp. 1165, 1172 (W.D.Wis.1996) ("it is well-established that courts can look beyond the administrative record when (1) evidence suggests bad faith or improprieties may have influenced the decision maker; (2) it appears that the agency has relied on substantial records and materials not included in the record; or (3) the procedures utilized and factors considered by the decision maker require further explanation for effective review."). A party must make a strong showing that an appropriate exception applies before a court will allow extra-record inquiry. *Sokaogon Chippewa Community (Mole Lake Band of Lake Superior Chippewa) v. Babbitt,* 929 F.Supp. 1165, 1172–1173.

### A. *Expert Testimony*

 The Miamis seek to supplement the record through the testimony of BAR staff (specifically, Dr. George Roth and Dr. Susan Greenbaum, who BAR subcontracted to work on the Miami petition), Miami tribal consultants (Dr. Jack Campisi and Dr. Elizabeth Glenn), and a neutral anthropologist.

Dr. Roth prepared the proposed finding supplemental technical report and the final technical report in the issues of the Miamis' contemporary community and political authority; it was upon these bases that the Department denied the Miamis' petition for

---

**4.** The Miamis suggest the hearing could be concluded in five days.

780

recognition. In support of its contention the Department's decision was arbitrary and capricious, the Miamis intend to argue that Dr. Roth's conclusions were incorrect, distort technical data, overlook relevant and probative data, and rely on unsound methodology, and in fact are dramatically different from those in other cases decided by BAR under the same regulations. The Miamis wish to have Dr. Roth explain why he ignored probative data, to explain how to read cryptic citations in his report, and to explain technical calculations in his report. The United States broadly objects to requiring government decision makers to testify about their mental processes, relying on *United States v. Morgan*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

Dr. Greenbaum is an anthropologist who, as BAR's subcontractor, did field work in the Miami community before the Department's proposed finding against acknowledgment. Dr. Roth expressly acknowledged in his technical report his reliance upon Dr. Greenbaum's work. The Miamis indicate that Dr. Greenbaum would testify regarding the completeness and reliability of Dr. Roth's conclusions as against her field work. Dr. Greenbaum would testify that Dr. Roth's report distorted some of her data and overlooks other data. The Miami's contend Dr. Greenbaum's testimony will help the court understand the administrative record.

Drs. Campisi and Glenn are both anthropologists. With respect to Dr. Campisi, the Miamis contend that "[j]ust as Dr. Greenbaum is best able to asses Dr. Roth's analysis in the proposed finding, Dr. Campisi is best able to assess Dr. Roth's analysis in the final determination." This is because Dr. Campisi, hired by the Miamis, also conducted field work within the Miami community and authored the Miamis' rebuttal to the Department's proposed finding against recognition. The Miamis also contend that Dr. Campisi would help the court understand, on an anthropological level, the differences between how the Miami petition and other petitions have been handled. Dr. Glenn also studied the Miamis after the Department made its proposed finding against recognition, and has maintained a professional relationship with

the Miamis throughout her career, predating her involvement in this matter. Dr. Glenn conducted a "limited network analysis and more elaborate distribution analysis." The Miamis contend that Dr. Glenn's work was largely overlooked by the Department in their final decision. The Miamis contend that Dr. Glenn's testimony would demonstrate that BAR's analysis of geographic distribution is simply wrong.

Last, the Miamis seek to introduce testimony from a neutral expert to explicate anthropological terms such as "community," "descent," "social interaction," and "political authority," as well as to provide background information regarding anthropological methodology. The United States agrees that a technical expert may be permissible for purposes of background information, but does not believe one is warranted in this case because this case is not of a "technical nature."

Given the burden on a party seeking an inquiry outside the record, a burden discussed in the preceding section, the court believes that the Miamis' requests for expert testimony to be, at best, premature. The court has not found, and could not find on this record, that bad faith or improprieties may have influenced United States, or that the United States relied on substantial records and materials not included in the record, that the agency's procedures and considerations require further explanation for effective review. If such concerns arise after review of the record as shaped by this order, the court will entertain a renewed request; at this point, however, the request for expert testimony is denied.

B. *Records of Other Acknowledgment Petitions*

The Miamis contend that the Department's denial of their petition for acknowledgment was arbitrary and capricious, at least in part, because it represented an inconsistent application of agency standards with respect to other decisions. A party can attack agency action on the grounds it is inconsistent with other agency action and is therefore arbitrary and capricious, but not without limitation. "Although 'patently inconsistent application of agency standards to

similar situations lacks rationality and is arbitrary,' there is no principle that enjoins perfect consistency. Perfection is not an attainable goal of government. A sequence of judicial decisions will not exhibit perfect consistency from case to case; no more should a sequence of administrative decisions be required to do so." *Illinois Bell Telephone Co. v. Federal Communications Commission,* 740 F.2d 465, 470–471 (7th Cir.1984) (*quoting Contractors Transport Corp. v. United States,* 537 F.2d 1160, 1162 (4th Cir.1976)); *see also Memorial Hospital of Carbondale v. Heckler,* 760 F.2d 771, 783 (7th Cir.1985) ("we are mindful that it may be arbitrary and capricious for an agency to apply one rule in some cases and the other in other cases without acknowledging or explaining the inconsistency.").

The United States offers to submit a joint legal appendix that would include proposed findings and final determinations, but would not include the records behind those decisions. The Miamis agree to this method, but also request they be given access to those materials not included in the appendix. The court does believe that the Miamis should be able to review those materials though discovery; the government has not responded to this request because it was made in the Miamis' reply brief.

The court accepts the proposal of the joint legal appendix, and leaves it to the parties to determine what should be contained therein. With respect to the Miamis' request to review all records not included in the appendix, the court cannot order that such discovery be allowed without first being apprised of the government's position. Accordingly, the Miamis are granted leave to file an additional motion on this issue if, after further evaluation and attempts to resolve any dispute with the United States, one becomes necessary.

### IV. *Conclusion*

In conclusion, for the reasons explained in this memorandum and order, the court GRANTS IN PART the plaintiffs' motion to complete and supplement the administrative record (docket entry # 129–1 and 129–2). The government is DIRECTED to complete the administrative record by adding to it all materials considered by the agency in deciding he Miami petition for recognition not already included therein, including: (1) draft reports, including (a) the draft reports of Dr. Susan Greenbaum, and (b) draft reports produced by BAR, including draft reports prepared by Dr. George Roth; (2) BAR notes and logs; and (3) BAR guidelines, directives, and manuals. The United States is AFFORDED the opportunity to seek a protective order with respect to any materials it claims is protected by the deliberative process privilege. The court DENIES WITHOUT PREJUDICE the plaintiff's request to present expert testimony, and DIRECTS the parties to prepare a joint legal appendix including those materials from other tribal acknowledgment petitions as agreed upon by the parties; the Miamis are AFFORDED leave to file an additional motion seeking discovery of any excluded materials if, after further evolution and attempts to resolve any dispute with United States, one becomes necessary.

The court DENIES the plaintiffs' request for oral argument (docket entry # 139).

SO ORDERED.