MIAMI NATION OF INDIANS OF
INDIANA, et al., Plaintiffs,

v.

Bruce BABBITT, et al., Defendants.

No. 3:92–CV–586RM.

United States District Court,
N.D. Indiana,
South Bend Division.

March 29, 1999.

Arlinda F Locklear, Jefferson, MD, Lorna K Babby, Native American Rights Fund, Washington, DC, David L Kiley, Sr, Albert C Harker, Keith M Harper, Kiley Kiley Harker Rogers, Michael and Certain, Marion, IN, for Miami Nation of Indians of Indiana, Inc., Frances Dunnagan.

Scott Keep, Dept. of Interior, div. of Indian Affairs, Washington, DC, R Anthony Rogers, U.S. Dept. of Justice, Washington, DC., Barbara N Coen, Dept. of Interior, Div. of Indian Affairs, Washington, DC, for Department of Interior, Bureau of Indian Affairs, Branch of Acknowledgment and Research, U.S.

*MEMORANDUM AND ORDER*

MILLER, District Judge.

The plaintiffs (the "Miamis") have filed a motion to supplement the administrative record through expert testimony. The defendants—collectively called the Government in this memorandum—oppose the motion. For the following reasons, the court denies the Miamis' motion for discovery and to supplement the administrative record through expert testimony.

In 1980, the Miamis filed a petition for federal acknowledgment as an Indian tribe pursuant to 25 C.F.R. Part 83 (1978).[1]

---

1. 25 C.F.R. Part 83 contains the procedures for establishing that an American Indian group exists as an Indian Tribe, commonly known as "acknowledgment regulations." The regulations were promulgated in 1978 and were revised in 1994. Previous filings indicate that the parties agree that this cause pertains solely to the regulations as they appeared from 1978 until the 1994 revision. Unless otherwise specified, all references to

The Assistant Secretary of the Interior, in both his proposed finding and final determination, found that the Miamis do not meet two of the seven criteria of the acknowledgment regulation: political influence and community. 55 Fed.Reg. 29,423 (1990); 57 Fed.Reg. 27,312 (1992).

The Miamis then filed a four-count complaint in this court. What remains of this complaint is Count 4, which seeks a review of the Government's application of the acknowledgment regulations to the Miamis.[2] In 1995, The Miamis filed a motion to complete and supplement the administrative record. This court granted the Miami's motion in part, ordering the Government to complete the administrative record, and denied without prejudice, as premature until the record was complete, the request to supplement the record by presenting expert testimony.

The Government completed the record pursuant to this court's 1996 order. The Miamis and the Government continue to disagree over the administrative record's state, and the Miamis seek to supplement the record due to the "technical nature of the acknowledgment inquiry and significant gaps in the documentary record." They contend that the court needs information in these areas to determine whether the Government's decision-making process was arbitrary and capricious. The Miamis ask the court to hold a limited evidentiary hearing at which witnesses would testify, not to adduce new factual material, but for the limited purpose of explaining the administrative record. The Miamis propose testimony of an unidentified issuer(s) of policy direction from the Assistant Secretary for Indian Affairs (with discovery to determine the witness(es)' identity), Board of Acknowledg-

ment and Recognition (BAR) staff, tribal consultants, and a "teaching" expert to explain the technical, complex issues involved in the decision-making process in this case.

■ Under the Administrative Procedures Act, this court ultimately reviews the agency's action in this case to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and "focuses on the rationality of an agency's decision making process rather than on the rationality of the actual decision." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir.1994). In all but exceptional cases, this review is limited to the "administrative record already in existence" and "not some new record made initially in the reviewing court," *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)), but "certain circumstances may justify expanding review beyond the record or permitting discovery." *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir.1988).

■ Circumstances that allow extra-record evidence include situations when (1) evidence suggests bad faith or improprieties may have influenced the decision maker, *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) *overruled on unrelated grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); (2) "it appears the agency has relied on documents or materials not included in the record," *Portland Audubon Soc. v. Endangered Species Committee,*

25 C.F.R. Part 83 are to the 1978 version at issue in this cause.

**2.** Count 1 sought a ruling that the Secretary of the Interior's decision withdrawing federal recognition of the Indiana Miamis in 1897 was *ultra vires;* the court ruled that the applicable statute of limitations barred that claim. *See Miami Nation of Indians of Indiana, Inc.*

*v. Lujan*, 832 F.Supp. 253 (N.D.Ind.1993). Counts 2 and 3 of the complaint challenged the validity of the Department's 1978 regulations; the court granted the Government's motion for summary judgment. *See Miami Nation of Indians of Indiana v. Babbitt*, 887 F.Supp. 1158 (N.D.Ind.1995).

984 F.2d 1534, 1548 (9th Cir.1993); (3) the procedures utilized and factors considered by the decision maker require further explanation for effective review, *see Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir.1986) (a court may consider evidence outside the administrative record as necessary to fully explicate its course of conduct or grounds of decision); and (4) "it is necessary to explain technical terms or complex subject matter involved in the agency action," *Animal Defense Council v. Hodel*, 840 F.2d at 1436 (citations omitted). *See also Miami Nation of Indians of Indiana v. Babbitt*, 979 F.Supp. 771, 779 (N.D.Ind.1996); *Sokaogon Chippewa Community (Mole Lake Band of Lake Superior Chippewa) v. Babbitt*, 929 F.Supp. 1165, 1172 (W.D.Wis.1996).

■ When a litigant seeks discovery or an evidentiary hearing to supplement the administrative record, a court may remand to the agency for further explanation. *Alvarado Community Hosp. v. Shalala*, 155 F.3d 1115, 1125 (9th Cir.1998) ("Normally, if the record before the agency does not support the relevant agency action, the proper course of action 'is to remand to that agency for further investigation' and explanation.") (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. at 744, 105 S.Ct. 1598 (1985)). The court may also request affidavits from the agency to explain the decision, *see Camp v. Pitts*, 411 U.S. at 142, 93 S.Ct. 1241; *Public Power Council v. Johnson*, 674 F.2d 791, 793 (9th Cir.1982); conduct an evidentiary hearing, *see Camp v. Pitts*, 411 U.S. at 143, 93 S.Ct. 1241; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. at 420, 91 S.Ct. 814; or permit limited discovery, *see Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir.1993) ("When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question."); *Friends of the Earth v. Hintz*, 800 F.2d at 828. Remand to the agency is the preferred course of action—unless an agency has first been presented and considered evidence bearing on the technical questions faced by that agency in making its determination, "it is imprudent for the generalist judges of the federal district courts ... to consider [that] testimonial and documentary evidence." *Cronin v. United States Dep't of Agriculture*, 919 F.2d 439, 444 (7th Cir.1990) ("only in an emergency should a reviewing court ... conduct its own evidentiary hearing").

The Miamis seek to supplement the record through the testimony of an unidentified person or persons from the assistant secretary's office, a neutral "teaching" expert, Dr. George Roth and Dr. Susan Greenbaum (BAR staff and BAR subcontractor), and Miami tribal consultants Dr. Elizabeth Glenn and Dr. Jack Campisi. The Miamis argue that their testimony is exceptional and necessary because of the "technical nature of the acknowledgment inquiry" and in order to "fully explicate the Government's decision."

Dr. Greenbaum is an anthropologist and BAR's subcontractor who performed the field work in the Miami community before the Government's proposed finding against acknowledgment. Dr. Roth, a BAR staffer, prepared the technical reports for the acknowledgment criteria at issue. Dr. Roth's technical report expressly relied on Dr. Greenbaum's work. The Miamis contend that Dr. Greenbaum would testify to the extent that Dr. Roth's report distorted some of her data and that her testimony is necessary to establish the deficiency of Dr. Roth's use of her work. Dr. Greenbaum's draft reports and Dr. Roth's technical report are part of the record.

Dr. Glenn is an anthropologist and the principal author to the Miamis' rebuttal to the Government's proposed finding. He studied the Miamis after the Government made its proposed finding against recognition and conducted a limited network analysis and more elaborate distribution analysis to demonstrate the geographic proximity of tribal membership. The Miamis contend that Dr. Glenn's testimony would establish the error in BAR's analysis of geographic distribution, a key

issue for both community and political authority. Dr. Glenn's work is a part of the administrative record.

Dr. Campisi is another anthropologist who became involved in the Miami rebuttal. Dr. Campisi conducted fieldwork within the Miami community that the Miamis contend the Government ignored in the final determination. Dr. Campisi's work is part of the administrative record.

The Miamis appear to rely on a combination of the second and third exceptions for allowing supplementation of the record—agency reliance on documents or materials not included in the record and agency procedures and factors considered requiring further explanation. The Miamis address three "significant gaps" in the record: 1) the difference between Dr. Greenbaum's research and reports and Dr. Roth's conclusions (an agency procedure requiring further explanation, testimony by Drs. Greenbaum and Roth); 2) that certain mathematical calculations, kinship and generational ties, and a comparison with other petitions cannot be understood by the reviewing court from the record (agency procedure requiring further explanation, testimony by Drs. Greenbaum, Glenn, and Campisi); and 3) the lack of documentation of a "policy direction" key to the petition's outcome (agency reliance on documents or materials not included in the record, testimony by unidentified policy maker).

The requested testimony for the first two areas would come from witnesses who already have contributed significantly to the record in one manner or another. Despite the contributions of each to the final determination, the Miamis argue, in short, that Dr. Roth's testimony is needed to explain his methodology, Dr. Greenbaum's testimony is needed to explain how Dr. Roth distorted her field work, and Dr. Campisi and Dr. Glenn are needed to explain how the Government disregarded their work in its final determination.[3]

■ Because an agency action must be examined by scrutinizing the administrative record at the time the agency made its decision, "[t]he court's inquiry outside the record is limited to determining whether the agency has considered all relevant factors or has explained its course of conduct or grounds of decision." *Miami Nation of Indians of Indiana v. Babbitt,* 979 F.Supp. 771, 779 (N.D.Ind.1996) (citing *Friends of the Earth v. Hintz,* 800 F.2d at 829). Any additional material should only be explanatory, because the focus of judicial review is not on the wisdom of the agency's decision or the winner in the battle of the experts. The information that the Miamis seek to present would address the wisdom of the agency recommendation rather than the process by which the recommendation was reached. Accordingly, the proposed additions to the record—the testimony to be drawn from Drs. Roth, Greenbaum, Campisi and Glenn—would lead court away from, rather than toward, the issue properly before it.

In an April 3, 1992 Briefing Paper to the Assistant Secretary—Indian Affairs, the BAR addressed its recommendation that Miami acknowledgment be denied. That paper stated that "[o]n February 28, 1992, the BAR staff requested policy direction as to whether the level of social relationships and tribal political authority the Mia-

---

3. One of the areas the Miamis identify as having no basis in the record regards Dr. Roth's interpretation of the geographic concentration of tribal members. The Miamis are concerned that Dr. Greenbaum provided the residence data to Dr. Roth based on zip code catchment areas, but that Dr. Roth based his analysis of geographic concentration on county boundaries without explaining how he made this determination of residence. The record indicates that the Miamis' petition for acknowledgment provided geographic concentration data by county boundary. *See* Alycon Trubey Pierce, *Genealogical Narrative Report on Miami Nation of Indians of Indiana, Inc.* (July 9, 1990) in Proposed Finding, with Accompanying Reports I.A. 1,254–255 (July 12, 1990). *See also List of Files Contained in the Administrative Record in* Defendants' Response to the Plaintiff's Renewed Motion to Supplement the Administrative Record with Testimony, Exhibit 4.

mi have maintained are consistent with the intent of the regulations." The briefing paper then indicated that .BAR had received the direction requested and that Miami social relationships and tribal political authority "do not reach the level envisioned for tribal status by the Acknowledgment regulations." Shortly thereafter, the Assistant Secretary of the Interior published his final determination.

■ The Miamis propose to examine a "person or persons in the Office of the Assistant Secretary who are responsible for the so-called policy direction provided" in February 1992, which they assert led to the negative determination. The Miamis contend that this "policy direction," although outcome-determinative of their petition, is limited to only an "oblique reference" in the administrative record, leaving the record "devoid of any information about this key part of the Government's decision-making process."

The Government first responds by asserting the deliberative process privilege that this court has ruled protects from disclosure the notes of the meeting in which the BAR staff "presented to the policy maker" and discussed a draft briefing paper, which in nearly ten single-spaced pages laid out the options as seen by the Director of the Office of Indian Services. At that meeting, the BAR staff orally requested policy direction and received oral direction. The Government implies that no written documents were presented to the policy maker and indicates that no written response from the policy maker resulted from this meeting. The Government next responds that the policy maker decided at that meeting that "the evidence submitted by the Indiana Miami was insufficient within the meaning of the regulations," an agency interpretation entitled to deference.

This court directed the Government to add to the administrative record "all materials considered by the agency in deciding the Miami petition for recognition not already included therein." If documents or

written directives existed, the Government should have added them, other than those privileged, to the administrative record then. The Miamis have given the court no reason to believe that the Government has not complied with that order, or to disbelieve that all written, unprivileged documentary research or recommendations relating to the acknowledgment decision are contained in the administrative record.

■ The Tribe seeks to introduce testimony from a neutral expert to explicate and essentially teach this court anthropological concepts, methodologies, and terms key to tribal acknowledgment. The concepts, methodologies and terms that are of importance here are those used by the government at the time of the acknowledgment decision; a 1999 assessment of anthropological methodologies and terms is unnecessary. The regulatory criteria and the directives, manuals and letters interpreting the regulations at the time of the final determination are part of the record and will guide this court in its review.

For the reasons explained in this memorandum and order, the court DENIES the plaintiffs' motion for discovery and to supplement the administrative record [Docket # 173].

SO ORDERED.